UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Gwendolyn Allen-Morris,                                  Case No. 14-12944

    Debtor.                                                  Honorable Nancy G. Edmunds
_____/

Gwendolyn Allen-Morris,

    Appellant,

v.

Nicholas Financial, Inc.,

    Appellee.
_____/

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT'S MARCH 26, 2014
ORDER DISMISSING APPELLANT'S ADVERSARY PROCEEDING**

This is an appeal from a March 26, 2014 Bankruptcy Court order dismissing Appellant Gwendolyn Allen-Morris' ("Allen-Morris") adversary proceeding against Appellee Nicholas Financial, Inc. The Bankruptcy Court dismissed the adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Bankruptcy Court's order is AFFIRMED.

I.    **Facts**

This appeal concerns Allen-Morris' purchase of a car. Allen-Morris purchased the car, a used 2002 Jeep Grand Cherokee Sport ("Jeep"), from Suburban Chrysler Jeep Dodge, Inc. ("Suburban Chrysler"). According to the sales contract, the "total cash price" of the Jeep was $9,881.70. (Compl., Ex. A.) This included a cash price of $9,131.00, a sales tax

of $560.70, and a document preparation fee of $190.00.[1] After Allen-Morris made a down payment of $1,152.00, the balance of the purchase price (and some other charges) were financed at an interest rate of 25% for a term of 48 months. Suburban Chrysler then assigned the sales contract to Nicholas Financial. Nicholas Financial is a finance company that principally provides credit to credit-challenged buyers of used cars. (Appellant's Br. at xv-xvii, Nicholas Financial SEC Filings.)[2] After the buyers execute the contracts with the dealership, Nicholas Financial purchases the contracts at a discounted price depending on the age and creditworthiness of the buyer, and the value of the car. (*Id.*)

Two years after purchasing the Jeep, Allen-Morris filed for Chapter 13 bankruptcy. She listed the Jeep and her lawsuit against Nicholas Financial on her bankruptcy schedules, and also listed Nicholas Financial as holding a lien on the Jeep. (R. at 101; Tr. at 27.) Nicholas Financial responded to Allen-Morris' bankruptcy in two ways. It first filed a proof of claim for the Jeep. (Compl., Ex. A.) It then filed a motion for relief from the automatic stay for the Jeep. (R. at 101; Tr. at 27.) The Bankruptcy Court later granted Nicholas Financial's motion for relief from the automatic stay, and the Jeep was sold at an auction.

---

[1] The complaint states that the purchase price of the Jeep was $9,321.00. (Compl. ¶ 11.) This number is the sum of the cash price and the document preparation fee.

[2] Although this information was not contained in the complaint, this Court can take judicial notice of publically available information when deciding a motion brought under Federal Rule of Civil Procedure 12(b)(6). *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

Before the Bankruptcy Court granted Nicholas Financial's motion for relief from the automatic stay, however, Allen-Morris filed an adversary proceeding against Nicholas Financial. The purpose of the adversary proceeding was to object to Nicholas Financial's proof of claim and to void its lien on the Jeep. Count I of the complaint seeks to disallow Nicholas Financial's proof of claim under Michigan's "wrongful-conduct rule" because the sale of the Jeep violated Michigan's criminal usury statute, Mich. Comp. Laws § 438.41, and the Michigan Motor Vehicle Sales Finance Act (MVSFA). Mich. Comp. Laws. § 492.101 *et. seq.* Count II of the complaint seeks to void Nicholas Financial's lien on the Jeep under 11 U.S.C. § 506(d).

The Bankruptcy Court dismissed Allen-Morris' adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court noted that because Nicholas Financial had already sold the Jeep, the entire case may have been moot. (R. at 98; Tr. at 24.) Despite this concern, the Court addressed Allen-Morris' substantive claims and found that Allen-Morris' complaint did not plausibly establish a violation of either statute. Accordingly, the Court held that Allen-Morris could not establish a violation of Michigan's wrongful-conduct rule. Allen-Morris later brought a motion for reconsideration that the Bankruptcy Court denied. (R. at 126.)

Allen-Morris now appeals the Bankruptcy Court's order dismissing her adversary proceeding.

II. **Standard of Review**

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158(a)(1). On appeal, a bankruptcy court's findings of fact are reviewed for clear error, while its legal conclusions are reviewed *de novo*. *McMillan*

3

*v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009). A ruling on a motion to dismiss a bankruptcy court adversary proceeding is reviewed *de novo*. *In re Grenier*, 430 B.R. 446, 449 (E.D. Mich. 2010) *aff'd*, 458 F. App'x 436 (6th Cir. 2012).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

"[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679 (internal quotation marks and citation omitted)."Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

III. **Analysis**

  A. **Mootness**

Although neither party addresses the Bankruptcy Court's mootness concerns at any length in their briefs, this Court is obligated to decide whether the fact that Nicholas

Financial has already sold the Jeep has mooted this case. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) ("The mootness inquiry must be made at every stage of a case."). Under Article III of the Constitution, federal courts only have jurisdiction to adjudicate actual "cases or controversies," and this applies to bankruptcy courts as equally as it does to district courts. *In re A.P. Liquidating Co.*, 421 F. App'x 583, 587 (6th Cir. 2011) (citing *In re Resource Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010)). Because moot cases no longer present an actual case or controversy, "a federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *United States v. City of Detroit*, 401 F.3d 448, 450-51 (6th Cir. 2005). A case becomes moot "when—for whatever reason—the dispute discontinues or [the court] is no longer able to grant meaningful relief to the prevailing party." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014). However, if the parties have a "concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013).

This case is not moot. Allen-Morris' complaint contains two counts. Count I seeks the disallowance of Nicholas Financial's proof of claim. Although the car has been sold, Allen-Morris still has a concrete interest in having the proof of claim disallowed. There are many effects of allowing a proof of claim. If the claim is allowed, Nicholas Financial may have a claim for a deficiency balance on the Jeep.[3] Furthermore, an order allowing a proof of claim can be a "final judgment" for *res judicata* purposes. *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 (2d Cir. 2007); *Siegel v. Fed. Home Loan Mortgage*

---

[3] The Bankruptcy Court noted this in its opinion denying Allen-Morris' motion for reconsideration. (R. at 128.)

5

*Corp.*, 143 F.3d 525, 529 (9th Cir. 1998); *In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993). Allen-Morris has an interest in disallowing the claim to avoid these effects. Count II of the complaint, however, is moot. Because the Jeep has been sold, there is no longer any lien on it for a court to void. Nevertheless, Allen-Morris' continued interest in Count I gives this Court the power to hear this case.[4]

### B. **Michigan's Wrongful-Conduct Rule**

Relying on Michigan's "wrongful-conduct rule," Allen-Morris argues that Nicholas-Financial's proof of claim must be disallowed because it is the result of a criminally usurious transaction. The wrongful-conduct rule is an affirmative defense. *Indus. Quick Search, Inc. v. Terryn*, No. 284163, 2010 WL 481057, at *2 (Mich. Ct. App. Feb. 11, 2010).[5] According

---

[4] It should be noted that this is not a case where the "bankruptcy mootness" rule applies. "Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *In re Made in Detroit, Inc.*, 414 F.3d 576, 580 (6th Cir. 2005); *see also* 11 U.S.C. § 363(m). If the appellant does not stay an order allowing the sale of his assets while appealing the decision, and the assets are sold, the case is moot because the court can no longer grant the appellant any effectual relief. *In re 255 Park Plaza Associates Ltd. P'ship*, 100 F.3d 1214, 1216-17 (6th Cir. 1996); *In re Asmar, Inc.*, No. 12-15053, 2013 WL 628581, at *4 (E.D. Mich. Feb. 20, 2013). Allen-Morris is not appealing the bankruptcy court's order granting Nicholas Financial relief from the automatic stay. Therefore, the "bankruptcy mootness rule" does not apply, and Allen-Morris can still be granted effectual relief.

[5] Although the wrongful-conduct rule is an affirmative defense, the requirements of the bankruptcy rules have required Allen-Morris to assert it in her complaint initiating the adversary proceeding. Although both the Bankruptcy Court and Nicholas Financial questioned the propriety of this action, it is not an issue in this case. Under the bankruptcy rules, a party cannot dispute the validity of a lien in an objection to a creditor's proof of claim. Fed. R. Bankr. P. 3007(b); Fed. R. Bankr. P. 7001(2). To do so, the party must file an adversary proceeding. Fed. R. Bankr. P. 3007(b). Nevertheless, the adversary proceeding is, in effect, still an objection the claim. *In re Moi*, 381 B.R. 770, 772 (Bankr. S.D. Cal. 2008) ("A claim objection is still a claim objection, whether raised by filed objection or by adversary."). And, as the Bankruptcy Court noted, it had jurisdiction to decide the case for this reason. (R. at 103; Tr. at 29.)

Nicholas Financial's argument that the adversary proceeding must be dismissed

to the rule, a plaintiff's claim is barred when it "is based, in whole or in part, on his own illegal conduct." *Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 212-13 (Mich. 1995). The rule has two requirements: (1) "the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute; and (2) "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Id.* at 214-15.

Allen-Morris bases her wrongful-conduct defense on the violation of two statutes: Michigan's criminal usury statute and the MVSFA. Nicholas Financial argues that if anyone violated these statutes it is Suburban Chrysler, and Allen-Morris cannot bring her defense against Nicholas Financial because a provision in the Truth in Lending Act (TILA), 15 U.S.C. § 1641(a), preempts the Michigan law that would allow her to do so. It also argues that the sale did not violate either statute. These arguments are addressed below.

1. **The Adversary Proceeding Was Brought Against The Proper Party**

Although Allen-Morris is asserting the wrongful-conduct defense against Nicholas Financial, the actions that she alleges have violated Michigan law were taken by Suburban Chrysler. This is not an issue. Suburban Chrysler assigned the sales contract, which was an installment sales contract, to Nicholas Financial. According to the "Michigan Holder Rule," "A holder of an installment sale contract is subject to all the claims and defenses of

---

because Allen-Morris is asserting criminal usury as a civil cause of action is therefore unpersuasive. Aside from the fact that Nicholas Financial has waived this argument by not presenting it to the Bankruptcy Court, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), Allen-Morris is not bring criminal usury as a civil cause of action. Rather, she is using criminal usury to satisfy an element of the wrongful-conduct defense. To the extent that Allen-Morris seeks monetary relief in this case on the basis of criminal usury, *Wilkerson v. Seder*, 265 N.W.2d 807, 808 (Mich. Ct. App. 1978) likely bars that part of the claim. It does not, however, require dismissal of the adversary proceeding.

the buyer arising out of the installment transaction. . ." Mich. Comp. Laws § 492.114a(b). The sales contract in this case also contained the following statutorily required language: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." Mich. Comp. Laws § 492.114a(b). As the wrongful-conduct rule is a defense, Allen-Morris can assert it against the holder of the contract, Nicholas Financial, even though the actions were taken by Suburban Chrysler.

Nicholas Financial argues that a provision in TILA preempts the Michigan Holder Rule and that this bars Allen-Morris' defense. Nicholas-Financial, however, did not present this argument to the Bankruptcy Court and has therefore waived it on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)("[A]n argument not raised before the district court is waived on appeal to this Court."). Although this is only a "general rule," *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001), this is not a case where deviation from this rule is appropriate. *Brown v. United States*, 545 F. App'x 435, 438 (6th Cir. 2013) ("Deviations are permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice. Such discretion is rarely exercised, and requires a compelling reason to disregard the traditional waiver rule.") (internal quotations and citations omitted).[6]

### 2. The Sale of the Jeep Did Not Violate Michigan's Criminal Usury Statute

---

[6] Even though Nicholas Financial waived this argument on appeal by not raising it before the Bankruptcy Court, this Court has considered the merits of Nicholas Financial's argument and finds it unpersuasive.

Allen-Morris first argues that Nicholas Financial's claim is barred under the wrongful-conduct rule because the sale of the Jeep violated Michigan's criminal usury statute. Mich. Comp. Laws § 438.41; *Scalici v. Bank One, NA*, No. 254632, 2005 WL 2291732, at *6 (Mich. Ct. App. Sept. 20, 2005)(barring a plaintiff's claim under the wrongful-conduct rule because the plaintiff violated the criminal usury statute). Under Michigan's criminal usury statute:

> A person is guilty of criminal usury when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding 25% at simple interest per annum or the equivalent rate for a longer or shorter period. Any person guilty of criminal usury may be imprisoned for a term not to exceed 5 years or fined not more than $10,000.00, or both.

Mich. Comp. Laws § 438.41. Allen-Morris argues that the sale of her Jeep violated this statute because it was sold to her at an interest rate exceeding 25% per year. The sales contract indicates that the Jeep was financed at an interest rate of exactly 25% per year. (Compl., Ex. A.) To show that the sale was criminally usurious, Allen-Morris must therefore establish that there was additional interest disguised somewhere else in the transaction. To do this, she relies on the NADA and Kelly Blue Book values of the Jeep to show that it was sold to her at a price above its retail value. (Compl. ¶ 12.) She argues that this inflated price constitutes the disguised interest that renders the transaction criminally usurious.

Taking all of these allegations as true, Allen-Morris has not shown that Suburban Chrysler violated the criminal usury statute by selling the Jeep to her at an inflated price. The Michigan criminal usury statute applies to the loan or forbearance of money. Mich. Comp. Laws § 438.41. It does not apply to the sale of property unless the sale is a merely pretense for a disguised loan. *See* 44B Am. Jur. 2d Interest and Usury § 96. In determining

9

whether what appears to be a sale of property is actually a usurious loan, "the entire transaction must be considered. The substance of the transaction, rather than the form, governs." *Heberling v. Palmer's Mobile Feed Serv., Inc.*, 326 N.W.2d 404, 406 (Mich. Ct. App. 1982).

There is no indication in the complaint that the sale of the Jeep was actually a disguised, usurious loan. Overcharging is not in itself usury."People are free to buy and sell their property, and as a general principle, the seller may exact any price it can obtain, however exorbitant, at least absent fraud, duress, or unconscionability." 9 Williston on Contracts § 20:12 (4th ed.) (citations omitted). Even overcharging solely because a product is being sold on credit rather than for cash is not in itself usury. Charging a higher price for credit sales is known as a "time-price differential." *Silver v. Int'l Paper Co.*, 192 N.W.2d 535, 535 (Mich. Ct. App. 1971). Michigan courts are clear that so long as the transaction is not a pretext, a seller can establish a time-price differential without implicating the usury statute. *Thelen v. Ducharme*, 390 N.W.2d 264, 267 (Mich. Ct. App. 1986) ("Generally, time-price differentials do not come within the provisions of the usury statute."); *Mfrs. Nat. Bank of Detroit v. Burlison*, 245 N.W.2d 350, 352 (Mich. Ct. App. 1976) ("A seller may charge more for the sale of goods or services on credit than for cash sales without rendering the contract usurous."). This is equally true for the sale of cars. *Black v. Contract Purchase Corp.*, 42 N.W.2d 768, 772 (Mich. 1950) ("Exacting a credit price for an automobile in excess of the legal interest on the cash price is not usurious.").

Allen-Morris' reliance on *Sultan v. Cent. Life Ins. Co. of Illinois*, 4 N.W.2d 713 (Mich. 1942), *People v. Coleman*, 59 N.W.2d 276 (Mich. 1953), and a variety of TILA cases is misplaced. None of these cases hold that a time-price differential is interest for the purpose

of Michigan's criminal usury statute. In *Sultan* and *Coleman*, the buyer was forced to purchase goods at a highly inflated price as a precondition for a loan. These sales were "sham[s] to evade the law, " and the seller could not hide the usurious interest behind them. *Coleman*, 59 N.W.2d at 277. Allen-Morris has not alleged that she was forced to purchase the Jeep at an inflated price to secure a loan so these cases do not support her argument.

The TILA cases are also unhelpful. Allen-Morris cites these cases for the proposition that time-price differentials are often considered as interest in financed transactions. *See, e.g.*, *Vines v. Hodges*, 422 F. Supp. 1292, 1299 (D.D.C. 1976). It is true that under TILA a time-price differential is considered to be a "finance charge." 15 U.S.C. § 1605(a)(1). Allen-Morris, however, does not argue that the sale violated TILA. She argues that it violated Michigan's criminal usury statute. Under Michigan's criminal usury statute, a time-price differential in itself is not interest. *Black*, 42 N.W.2d at 772.

Because of this, Allen-Morris has not plead facts plausibly showing that sale of the Jeep was pretext for a loan. Michigan courts typically find pretext where the seller did not disclose that he was charging a higher price for credit or the buyer was not given a choice between a credit-price and a cash-price. *See, e.g.*, *Mathews v. Aluminum Acceptance Corp.*, 137 N.W.2d 280, 284-85 (Mich. Ct. App. 1965). There are no facts in the complaint that indicate that this occurred. Even if Suburban Chrysler did overcharge for the Jeep, this does not mean that Allen-Morris paid a higher price because she was buying with credit rather than cash. For the sale to be pretextual, Allen-Morris would have to show that Suburban Chrysler charges a credit-price and cash-price for the Jeep and that it did not disclose this to her or give her a choice between the two. She has not done this.

Allen-Morris' main allegation of pretext is that Nicholas Financial has a business model of providing credit to credit-challenged individuals and partners with dealerships to have the sales notes assigned to it at a discount. Although some courts have looked to a close relationship between a seller and a finance company as evidence of pretext, the relationships have been much closer than the one alleged here. *See* 14 A.L.R.3d 1065 § 14 – Close Relations Between Seller and Transferee of Paper. Furthermore, without other evidence of pretext, close relationships alone are insufficient to show that a purported sale was actually a disguised loan. In *Black,* for example, a buyer bought cars from a dealership, and the dealership sold the sales contracts to a finance company. 42 N.W.2d at 770-71. The dealership and the finance company had a close relationship. The finance company "furnished rate charts, blank forms and credit information, asserted willingness to discount the obligations before the transaction transpired and gave the dealer a rebate." *Id.* at 772. The court held that this did not show that the sales were actually usurious loans. "The sales of the vehicles were unquestionably consummated and were the actual basis of the dealings. They were not fictitious creations serving as camouflage." *Id.*

Here, the sale of the Jeep was also "unquestionably consummated" and "the actual basis of the dealings." *Id.* The fact that Nicholas Financial partners with dealerships to purchase discounted sales contracts is not sufficient to establish that the sale of the Jeep was a disguised, usurious loan.

3. **The Sale of the Jeep Did Not Violate the MVSFA**

Allen-Morris alternatively argues that the wrongful-conduct rule bars Nicholas Financial's claim because the sale violated the MVSFA. Mich. Comp. Laws § 492.118. Allen-Morris has cited no cases where a seller's violation of the MVSFA implicated the

wrongful-conduct rule, and it is unlikely that it would. Under the first requirement of the rule, Allen-Morris must show that the transaction violated a penal or criminal statute and rose to the level of serious misconduct sufficient to bar a cause of action. *Orzel*, 537 N.W.2d at 214; *Scalici*, 2005 WL 2291732, at *3. "The mere fact that a plaintiff engaged in illegal conduct at the time of his injury does not mean that his claim is automatically barred." *Orzel*, 537 N.W.2d at 214.

Violating the MVSFA is a criminal act. A licensed installment seller or finance company who "wilfully or intentionally" violates the act commits a misdemeanor. Mich. Comp. Laws § 491.137(b). The punishment is a "fine of not more than $500.00 for the first offense; and for each subsequent offense a like fine and/or suffer imprisonment not to exceed 1 year in the discretion of the court." *Id.* Although criminal, a violation of this act likely does not rise to the level of serious misconduct sufficient to bar Nicholas Financial's claim. This punishment is far less substantial than that described as "serious illegal conduct" in *Orzel*. 537 N.W.2d at 215. In *Orzel*, the plaintiff's tort action against a pharmacy for supplying him with prescription painkillers was barred because his actions in acquiring and using the drugs constituted multiple felonies. These felonies could "produce widespread social loss." *Id.* The court also noted "the significant degree of harm and punishment associated with such violations." *Id.* at 214. It is unlikely that a violation of the MVSFA constitutes "serious illegal conduct" warranting application of the wrongful-conduct rule.

Even if a violation of the MVSFA would bar a plaintiff's recovery under the wrongful-conduct rule, Allen-Morris has not plead sufficient facts to show a violation. The main factual allegations in the complaint are: (1) the purchase price of the Jeep was $9,321.00;

13

(2) the NADA and Kelly Blue Book values for similar cars are at most $7,500.00; (3) the interest rate was 25%; (4) Nicholas Financial's business model relies on extending credit to credit-challenged individuals; and (5) Nicholas Financial partners with dealerships to acquire sales notes at a discount. (Compl. ¶¶ 11-13.) Allen-Morris argues that these facts state a plausible claim that Suburban Chrysler violated the MVSFA provision setting the maximum finance charge for an installment sale at 25%. Mich. Comp. Laws § 492.118. This Court disagrees. The MVSFA does prohibit sellers from charging "a finance charge on any installment sales contract covering the retail sale of a motor vehicle" exceeding 25% per year. Mich. Comp. Laws §§ 492.118, 445.1854. However, just as under the criminal usury statute, overcharging for the Jeep in itself is not a violation of this provision.

The MVSFA sets a limit on the maximum "finance charge" allowed in an installment sale of an automobile. The term "finance charge" is given the definition that it has under TILA. Mich. Comp. Laws § 492.102. TILA defines "finance charge" as:

> The sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C.A. § 1605. The Sixth Circuit has interpreted this to mean that a finance charge is "an increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, *solely because he is a credit customer* . . . ." *Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001). To show that a higher price is a finance charge, "the plaintiff must demonstrate a 'causal connection' between the higher price and the extension of credit." *Id.*

Although Allen-Morris has alleged that she was overcharged for the Jeep, that alone is insufficient to show a "causal connection between the higher price and the extension of credit." *Id.* Allen-Morris must show that the higher price was a finance charge imposed *solely because she was a credit customer*. The complaint contains no facts that plausibly demonstrate this. A TILA case from the Second Circuit is persuasive. *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36 (2d Cir. 2011). In *Poulin*, the court affirmed a dismissal of a complaint that a dealership was charging undisclosed finance charges in violation of TILA because the complaint did not allege sufficient facts showing the existence of finance charges. *Id.* at 40. The court stated:

> [T]he complaint in this case does not allege that subprime credit customers pay higher purchase prices than non-subprime credit customers for comparable merchandise. If the book values in the NADA Guide are a fair proxy for the purchased cars' market values, plaintiffs have alleged a bad bargain. But the complaint provides no facts from which to infer that that bad bargain stemmed from an undisclosed finance charge. The complaint contains no information about the price charged to cash purchasers of automobiles of the same vintage as those purchased by plaintiffs. The pleaded facts may portray the use of different prices, but the difference is measured by the age of the cars, not the customers' credit status. Because the complaint fails to allege purchase price discrimination based on credit status, it does not state an actionable claim.

*Id.* Plaintiff's complaint fails to state a claim for similar reasons. The complaint does not state that Suburban Chrysler sells cars to customers at one price for cash but at a higher price for credit. Nor are there are any facts indicating that Allen-Morris was charged $9321.00 solely because she was a credit customer. The fact that Nicholas Financial's business model relies on extending credit to credit-challenged individuals or that it partners with dealerships to have sales contracts assigned to it at discount prices does not plausibly show that Allen-Morris was overcharged for the Jeep solely because she was buying on credit. The facts in the complaint, taken as true, do not "raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.[7] Allen-Morris' complaint was properly dismissed.

IV. **Conclusion**

For the foregoing reasons, the Bankruptcy Court's order is AFFIRMED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 29, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2014, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager

---

[7] Allen-Morris also suggests in her brief that the sale violated Mich. Comp. Laws § 492.113(2)(a). This provision requires sellers to disclose "the cash price of the motor vehicle" in the installment sales contact. *Id.* "Cash price" is defined as:

> [T]he price measured in dollars at which a seller of a motor vehicle would in good faith sell to the buyer or to any other buyer under like circumstances, and the buyer would in good faith buy from the seller, the motor vehicle that is the subject matter of an installment sale contract if the sale were a sale for cash instead of an installment sale

Mich. Comp. Laws § 492.102(b). Although Allen-Morris included a citation to Mich. Comp. Laws § 492.102(b) in the complaint, (Compl. ¶ 15), she did not argue that the sale violated Mich. Comp. Laws § 491.133(2)(a) to the Bankruptcy Court. For that reason, she has waived this argument on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Even if it were not waived, however, Allen-Morris has not alleged facts to plausibly state such a claim. The NADA or Kelly Blue Book value of the Jeep is insufficient to show a failure to disclose its "cash price." *See Ringenback v. Crabtree Cadillac-Oldsmobile, Inc.*, 99 F. Supp. 2d 199, 203 (D. Conn. 2000)("[T]he only evidence concerning the true market value of the [car] before the court is the N.A.D.A. figure. This is not an adequate substitute for proof of the true market value of the car.").